UNITED STATES, Appellee

v.

GEORGE H. MARSHALL, JR., Seaman Apprentice, U. S.
Navy, Appellant

4 USCMA 607, 16 CMR 181

No. 3531

Decided August 6, 1954

CDR John T. Davies, USN, for Appellant.
CDR E. L. McDonald, USN, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

On June 26, 1951, a special court-martial found the accused guilty of unauthorized absence, and imposed a sentence which included a bad-conduct discharge. The convening authority suspended the punitive discharge for six months, and provided for automatic remission thereof at the end of that period. On August 20, 1951, a board of review affirmed the sentence as approved below. Thereafter, in October 1951, the accused again absented himself without authority, was tried by a second special court-martial, and was again sentenced to receive a bad-conduct discharge, to confinement at hard labor for four months, and to partial forfeitures for a like period. Still another absence without leave, occurring in November 1951, led to a proceeding to revoke the suspended bad-conduct discharge—pursuant to the provisions of the Uniform Code of Military Justice, Article 72, 50 USC § 659. The suspension was vacated. At this time, the sentence imposed by the second court-martial was disapproved in its entirety—for the apparent purpose of accelerating the accused's exodus from the service through the agency of the bad-conduct discharge which had already been approved by the convening authority and affirmed by a board of review. In late December 1951 the accused received his discharge.

Much later—in fact on May 13, 1953 —Naval authorities mailed to "Mr. George W. Marshall," in Los Angeles, California, a letter stating in substance that when—on an unspecified date—the decision of the board of review had been forwarded to the Eleventh Naval District for service on him, it had been returned to The Judge Advocate General, United States Navy, with the notation that Marshall "had been discharged from the naval service on 28 December 1951." The letter further informed the accused that he would have "thirty (30) days from the date of receipt of this notification in your case to submit a petition to the United States Court of Military Appeals for a grant of review."

On July 8, 1953, the accused replied to the effect that he had failed to receive the Navy's letter of May 13 until July 6, 1953, by reason of a change of address to Hannibal, Missouri, and that he desired consideration of his case. The following month appellate defense counsel prepared a formal petition for review in which errors of law were assigned. Government counsel has moved to strike this paper, and now contend that we are precluded from reviewing the record of trial in Marshall's case be-

608

cause of the interval between the board of review's decision in August 1951 and the accused's first action in July 1953—and also on the ground that the accused's communication of July 8, 1953, did not meet the requirements of a petition for review.

## II

Had the accused been a member of the Naval service at the time he received the letter of May 13, 1953, ▆ he would have had available to him without cost the assistance of military counsel in the preparation of a petition for review. He would also have had ready to hand copies of the Rules of Procedure of this Court with particular reference to the preparation of such petitions. As a civilian in Hannibal, Missouri, he was, of course, in a much less advantageous position.

It is clear that, if the Navy executed the sentence to a punitive discharge prior to the expiration—much less the beginning—of the accused's period for appeal to this Court, its action was distinctly premature. Uniform Code, supra, Article 71 (c), 50 USC § 658. Thus, the accused's return to civilian life—which substantially disadvantaged him with respect to the preparation of a petition for grant of review—would have been produced through action on the Navy's part which was unauthorized. Under such circumstances, it seems harsh to deprive the accused of a right to consideration of his case in this Court by reason of his want of familiarity with the procedures for framing a petition for review. Cf. Gerringer v. United States, — F2d — (CA DC Cir), March 15, 1954, (22 LW 2451). Especially is this true here since the informality of the accused's communication requesting consideration of his case can in no wise have prejudiced the Government, and because the forwarding of an informal statement without the consumption of time involved in an inquiry into the requirements of a petition for review was reasonable in light of the delay in receiving the Navy's letter forwarded from Los Angeles. This Court has always taken a liberal view with respect to the form of a petition for review. In general, we have required no more than a clear expression of purpose on the part of a convicted accused. United States v. Jackson, 2 USCMA 179, 7 CMR 55. Thus, we conclude that the Government's second ground for dismissal is without merit.

## III

The Uniform Code in Article 67 (c), 50 USC §654, accords to an accused "thirty days from the time ▆ he is notified of the decision of a board of review to petition" this Court. The Manual for Courts-Martial, United States, 1951, makes specific provision for service on an accused of a copy of the decision of the board of review in his case. Paragraph 100c (1). The Rules of Procedure of this Court—promulgated under the aegis of Article 67 of the Code—direct that an accused person shall file a petition for review "within 30 days after receipt of the decision of a board of review." Rule 22 (a).

The tenor of the Navy's letter of May 1953 suggests strongly that the accused was not served prior to that date with a copy of the decision of the board of review, as envisaged by the Manual and by Rule 22 (a). Careful investigation by counsel has reaffirmed the compelling inference that no formal service took place prior to May 13, 1953. The clear language of the Code, the Manual, and the Rules of this Court would then seem to dictate that the accused here enjoyed a period of thirty days from receipt of the Navy's letter within which to request review. There seems to be no dispute that this letter did not reach him until on or about July 6, 1953.

The accused has submitted an affidavit specifically denying "knowledge [of] what action, if any, had been taken by the Board of Review and/or the Judge Advocate General of the Navy on the court-martial (26 June 1951) which adjudicated the discharge." He also avers that "no person in any official capacity informed me as to the action of the Board of Review or a right of appeal to the United States Court of Military Appeals." These positive and unqualified assertions concerning a want of notification—even of knowledge—of

the board of review's decision, the Government has sought to counter in several ways.

For one thing, Government counsel has contended that the accused is conclusively presumed to know the law—and therefore that he must be presumed to have known that the United States Navy would not have executed his discharge in the absence of affirmance of his sentence by a board of review. Viewing the matter realistically, we are inclined to doubt the propriety of applying a conclusive presumption of knowledge of law to events transpiring during the autumn of 1951—when the Uniform Code of Military Justice was yet in its early infancy. In any event, we may suggest that—had the accused known his appellate rights fully—he would presumably have known also that the thirty-day period within which review of a case in this Court may be sought is said to run from the time an accused is *notified* of the decision of the board of review in his case. Uniform Code, Article 67(c). Therefore, he might understandably have assumed that he was entitled to wait until the Navy had informed him of the action of the board in his case. In short, an approach through the presumption of knowledge of law is fundamentally unrealistic, and can lead directly to either of two diametrically opposed conclusions.

Government counsel has submitted affidavits from the officers who represented the accused at his two trials by special court-martial. These officers assert in highly general terms that the accused was advised of his "rights, including his appellate rights, under the Uniform Code of Military Justice." None of these affidavits, however, indicates that he was informed of what the board of review had decided. As previously suggested, the accused could know the law concerning his appellate rights and yet understandably assume that his right to petition this Court could not fail until the lapse of thirty days from the delivery to him of a copy of the board's decision. Moreover, a routine and abstract discussion of appellate rights by defense counsel or others is not apt to be very meaningful.

The important things as to which advice to the accused was required are: (1) that in *his particular* case the board of review had reached a certain decision; (2) that he possessed only thirty days within which to petition for review of the decision; and (3) that thereafter he could not request review by this Court.

It has been rather conclusively shown that—during the proceeding to vacate the suspension of his bad-conduct discharge—the accused was informed verbally that "On 16 November 1951 the sentence was approved by the Judge Advocate General of the Navy and was forwarded to the U. S. S. Logan." Government counsel has insisted that this statement to the accused constituted "notification" to him of the board's action. Considering this statement in context, and observing that it constituted a distinctly passing reference to the appellate review of his case, it is difficult to construe this portion of the vacation proceeding as amounting to "notification" to the accused in any sort of manner contemplated by either the Code or the Manual. There was no mention whatever of a board of review or its decision, and certainly no information was supplied to the effect that the board had acted on August 6, 1951. It appears to be conceded that no written copy of the board's decision was made available to the accused, as envisaged by the Manual and in Rule 22 of this Court's Rules.

The delivery of a copy of the board of review's decision assumes compelling importance in our minds. It must be clear that the reasoning of a decision, the grounds on which it is predicated, or the presence of a dissent, may influence substantially an accused's determination to petition for review or not to do so. Thus, it is essential that he know more than the final result reached by the board for the purpose of deciding intelligently whether to avail himself of his appellate rights. Furthermore, to avoid difficulties along the lines which characterize the instant case, it is administratively necessary to insist on adherence to a clean-cut method for informing an accused person of the decision of the board of review

in his case. That procedure is stated in the Manual with complete clarity—but was not complied with as to the present accused until his receipt of the Navy's letter dated May 13, 1953. Under the circumstances, the lucid and unambiguous language of the Code's Article 67, the Manual for Courts-Martial, and this Court's Rule 22 leaves no choice but to hold that the present accused requested review with due timeliness.

IV

Accordingly the motion of Government counsel to strike the accused's petition for review is denied and the petition is granted.

Chief Judge QUINN concurs.

Judge LATIMER concurs in the result.