UNITED STATES, Appellee,

v.

Thomas W. LARNEARD, Private First Class, U. S. Marine Corps, Appellant.

No. 31,284.

NCM 73–1284.

U. S. Court of Military Appeals.

May 2, 1977.

*Lieutenant Commander Carl H. Horst,*
JAGC, USN, argued the cause for Appellant, Accused.

*Lieutenant Steven D. Moore,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress,* USMC.

*Captain Anthony J. Siano,* argued the cause amicus curiae on behalf of the United States Army, as appellate defense counsel. With him on the brief were *Colonel Alton H. Harvey* and *Captain John R. Osgood.*

*Captain John F. DePue,* argued the cause amicus curiae on behalf of the United States Army, as appellate government counsel. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr.,* and *Captain Jack M. Hartman.*

*Major Byron D. Baur,* argued the cause amicus curiae on behalf of the United States Air Force, as appellate defense counsel. With him on the brief were *Colonel Jerry E. Conner,* and *Major John A. Cutts, III.*

*Colonel Julius C. Ullerich, Jr.,* filed a brief amicus curiae on behalf of the United States Air Force, as appellate government counsel.

Opinion of the Court

PERRY, Judge:

The appellant was convicted by general court-martial on April 18, 1973, of three lengthy absences without leave totaling approximately 35 months, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was sentenced to a bad conduct discharge, confinement at hard labor for 1 year, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved both the findings and the sentence, as ultimately did the Navy Court of Military Review on July 25, 1974, after having in the interim returned the record for a

limited factual *DuBay*[1] hearing on a matter unrelated to the instant proceeding.

After he had served the period of confinement, the appellant asked for and was granted permission to return home on "appellate leave" pending completion of appellate judicial review of his court-martial conviction.[2] When the Court of Military Review affirmed his conviction and sentence in July 1974, a copy of that decision was sent by registered mail, return receipt requested, to the appellant's last known civilian address, provided by him prior to his departing on appellate leave.[3] However, the appellant had married and had changed his residence, but had failed to notify the Navy of this,[4] and his sister signed for the mail matter on August 26, 1974. On September 15, 1975, the appellant placed in military channels his petition to this Court

for grant of review of his case. In a letter of the same date accompanying his petition, he explained that he had "just received the papers at this date."

On December 29, 1975, the Government moved this Court to dismiss the appellant's petition as being untimely filed. Noting that the appellant's "agent" signed for the appellant when the decision was delivered at the address he had furnished,[5] and noting further that the appellant had not advised the authorities of any more recent address as he was required to do, the Government urged that constructive service [6] was had on the appellant on August 26, 1974, and that the 30-day period afforded him to petition this Court [7] began to run on that date.[8] Hence, the Government argues that the petition was stale and that this Court lacked jurisdiction to entertain it.

1. *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

2. "Appellate leave," alternatively referred to as "excess leave," is authorized by the military services for an indefinite period pending completion of appellate review of a court-martial conviction, upon application by the service member concerned, when a punitive discharge has been adjudged and any sentence to confinement either has been served or has been deferred. Bureau of Naval Personnel Manual (BUPERSMAN) 3420280; Marine Corps Order (MCO) 1050.15, paragraph 5c(6) (Jun. 3, 1968); Army Regulation 630–5, paragraph 5–2d(4) (Jun. 1, 1975); Air Force Manual 177–373; and Air Force Regulation 125–18, paragraph 5–37b (Jan. 16, 1975).

3. When a service member has been granted appellate leave, service upon him by mail of the Court of Military Review decision purportedly is authorized. The Army and the Air Force accomplish this by registered or certified mail, return receipt requested, by addressee only. Army Regulation 27–10, paragraph 15–4*b*(1), change 10 (Feb. 23, 1973); Air Force Manual 111–1, paragraph 8–4a (Jul. 2, 1973). However, the Navy authorizes notice by registered mail, return receipt requested, by *anyone* at the accused's address. Manual of The Judge Advocate General, Department of the Navy (JAGMAN), paragraph 0133d(3)(a) and (b); *see* BUPERSMAN 3420280.

4. All services require the member about to depart on appellate leave to advise proper military authorities promptly of any change in the leave address given by the member. BUPERSMAN 3420280; MCO 1050.15, paragraph

5g(2)(c); Air Force Regulation 125–18, *supra*, paragraph 5–37b(1)(b); *see* Army's form letter USDB FL 286 (CL) (Feb. 1, 1976), to be signed by the member requesting excess leave.

5. The Government contends that the action of the appellant's "agent" (his sister) in signing for the decision is imputable to the appellant. JAGMAN, paragraph 0133d(3)(b).

6. The Navy's regulations appear to treat as *actual* service a receipt, as in this case, by *anyone* in the service member's household at the member's leave address (which causes execution of a certificate of service), and to view as *constructive* service only those instances when *no* signature may be obtained from anyone that the Navy interprets, by virtue of family ties, to be the member's "agent" (which causes execution of a certificate of attempted service). *Compare* JAGMAN, paragraph 0133(3)(b), *with* paragraph 0133d(3)(c) *and* paragraph 0133d(4). However, in its brief before this Court, the Government has referred to the former situation as amounting to constructive, rather than actual service. We agree, especially when, as here, the member no longer resides with the rest of his family at that address. *See* Army Regulation 27–10, paragraph 15–4*b*(1) and (2); Air Force Manual 111–1, paragraphs 8–4a, 8–4e, and 8–4f.

7. Article 67(c), Uniform Code of Military Justice, 10 U.S.C. § 867(c).

8. JAGMAN, paragraphs 0133d(3)(b) and 0133d(4); BUPERSMAN 3420280.

In an effort to resolve the fundamental questions posited in the Government's motion, this Court by order dated January 26, 1976, required the parties to file briefs on the following three specified issues: [9]

1. Is it constitutionally permissible, in a criminal case, to use constructive service upon an accused to begin the running of the time permitted for an appeal to this Court.

2. If constructive service is constitutionally permissible, must constructive service be authorized by legislative enactment.

3. If constructive service is constitutionally permissible but must be authorized by legislative enactment, is there such an enactment applicable to the military.

Additionally, because it is so closely related to this matter of constructive service and even though the appellant ultimately did personally sign the petition in this case, this Court specified a fourth issue it wished the parties to brief:

4. Under the Uniform Code of Military Justice must an accused personally petition this Court or may his counsel petition for him.

I

## SERVICE OF THE COURT OF MILITARY REVIEW DECISION

■ Neither the United States Constitution nor the common law confers upon an accused a right to appeal from a criminal conviction. *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894); *Carroll v. United States*, 354 U.S. 394, 399–400, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). Thus, the creature that our law knows as a criminal appeal is one solely of statutory origin. However, once granted, the right of appeal

must be attended with safeguards of constitutional due process. *Griffin v. Illinois*, 351 U.S. 12, 17, 76 S.Ct. 585, 100 L.Ed. 891 (1956). This due process inquiry is whether the procedural framework enacted by the legislature offends traditional notions of fair play and substantial justice. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimally, to comport with this standard, the statute must indicate a reasonable probability that, if complied with, the accused will receive actual notice. *Wuchter v. Pizzutti*, 276 U.S. 13, 18–19, 48 S.Ct. 259, 72 L.Ed. 446 (1928). As the Supreme Court phrased it in *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), the question which must be asked is whether the form of service prescribed in the statute is "reasonably calculated to give . . . actual notice of the proceedings and an opportunity to be heard."

■ Measured against this yardstick, we cannot say that the mode of service set out by the regulation and followed in this case is unconstitutional.[10] Surely, sending the Court of Military Review decision and other allied papers to an accused at the last address he himself furnished the military, in conjunction with the obligation upon the accused to advise the proper authorities of any address change subsequent to his departure on appellate leave, is a procedure reasonably calculated to furnish that accused actual notice of the intermediate court's decision. The problem with the procedure, however—one which we will discuss later in this opinion—is the fact that it is mandated, not by statute or by rules authorized by statute, but by a service regulation not founded in any legislative enactment.

---

9. Subsequently, we granted motions by the defense and the Government appellate divisions of the Army, Air Force, and Coast Guard, to appear as *amici curiae*. The performance of these *amici*, both through their briefs and in oral argument before this Court, was of great aid, and this Court's gratitude is extended to them.

10. Indeed, the Supreme Court itself and the Congress have sanctioned accomplishing notice to a criminal accused via the mails. *See, e. g.*, Fed.R.Crim.P. 4(d)(3), 49(c); Fed.R.Civ.P. 5, made applicable to the criminal justice system by application of Fed.R.Crim.P. 49(b).

Suffice it to say at this point, nonetheless, that constructive service accomplished in the *manner* here utilized does not rub contrary to the Constitution.

■ As earlier noted, the right to a criminal appeal is one derived solely from a legislative pronouncement. That being the case, the *procedure* for perfecting such an appeal, too, must be a matter of statutory concern—or of rules promulgated pursuant to a grant of statutory authority. *See Carroll v. United States, supra; United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). The Government in this case impliedly admitted as much when it acknowledged in its brief before this Court that the Federal rules which permit constructive service of notice of certain proceedings "have been promulgated pursuant to general statutory authority which directs that rules may be prescribed to govern judicial procedures," citing 28 U.S.C. § 2072 and 18 U.S.C. §§ 3771 and 3772.

If the method for taking an appeal is a subject emanating from a statutory license, the question then becomes, by what legislative grant of authority are the military regulations published dealing with constructive service? The Government contends that these rules, which address the method of performing a condition precedent to, and limiting the right of, an *appeal to this Court,* are propagated under the aegis of Article 36 of the Uniform Code,[11] which empowers the President to prescribe the procedure, including modes of proof, *in cases before courts-martial* and sundry other military tribunals. But on its face, that statutory provision does not extend to the matter with which we are here concerned, but rather is limited to the initial trial level in the military justice system. *See United States v. Washington,* 1 M.J. 473, 475 (1976); *United States v. Ware,* 1 M.J. 282, 285 n. 10 (1976).

■ The section of the Uniform Code dealing with appellate rights and with procedure for appeals to this Court is Article 67.[12] Subsection (c) of the article states that:

> The accused has 30 days from the time when *he* is notified of the decision of . . . [the Court of Military Review] to petition the Court of Military Appeals for review. [Emphasis added.]

We believe this language contemplates actual notice of the decision of the Court of Military Review. While this Court could itself establish rules providing for a form of constructive service by mail which would begin the time period within which a petition must be taken to this Court,[13] the fact is that to date we have not done so.

Thus, we conclude that the only lawfully promulgated provision dealing with the act which triggers the time period within which an accused may perfect his appeal to this Court is the above-quoted portion of Article 67(c), which requires that the accused himself be notified. Constructive service of the type utilized by the Government herein was not included in the act.

The Government contends that unless the method of constructive service utilized in the instant case is available, no alternative method for compliance with Article 67(c) exists other than that of obtaining personal service of the court's decision upon the serviceperson. It is further contended that this may not be possible in a case like this one, where the appellant was given leave pending completion of judicial review and thereafter was not available for personal service of the court's decision. Therefore, it is urged that the "appellate" and "excess" leave programs might require reevaluation with possible adverse consequences to service persons otherwise eligible for such leave pending judicial review of their court-martial convictions. While that is a policy consideration to be resolved by those to whom such matters are entrusted, we doubt

**11.** Article 36, UCMJ, 10 U.S.C. § 836.

**12.** Article 67, UCMJ, 10 U.S.C. § 867.

**13.** Article 67(a)(1), UCMJ, 10 U.S.C. § 867(a)(1), authorizes the Court of Military Appeals to prescribe its rules of procedure.

that drastic alterations of the present leave practices need follow as a consequence of our decision today.

■ We believe, however, that another method of service exists and can be accomplished within the purview of Article 67(c). That method will be seen with realization that, generally, any notice that must be given an accused or any action which must be taken by him may, when he has counsel, be effected either through the accused *or* his counsel. References to a "defendant" or to "a party" are usually held to mean that person *or* his counsel. *Hensley v. United States,* 108 U.S.App.D.C. 242, 281 F.2d 605, 608 (1960). Similarly, for notice purposes the Federal Rules treat the defendant and his counsel as one.[14] The relationship between attorney and client is one of agency and the law of agency applies. A party usually acts through his attorney and the attorney acts in the client's stead. *Winchell v. Lortscher,* 377 F.2d 247 (8th Cir. 1967); *Hensley v. United States, supra* at 607–08. Nothing in the statute precludes the accused from specifically authorizing his attorney, through the execution of a power of attorney clearly defining that authority, to accept service of the decision of the Court of Military Review and to take action on his behalf,[15] including that of preparing and filing a petition for review in this Court if the accused desires that such action be taken.[16]

■ We, therefore, hold that the 30-day period following decision by a Court of Mili-

tary Review within which an accused must initiate his petition to this Court commences to run the day the accused receives actual notice of that decision. The giving of actual notice may be accomplished by delivery of a copy of the decision personally to the accused or his attorney provided the accused shall have executed a valid power of attorney which clearly designates his counsel as his agent for that purpose.

Under the facts alleged by the appellant and not rebutted by the Government, the petition for review in the instant case was timely filed.

## II

## PETITION FOR REVIEW TO THE U. S. COURT OF MILITARY APPEALS

Just as the filing of a notice of appeal is a jurisdictional prerequisite to the federal right of appeal,[17] the military accused must timely submit his petition in order to invoke the jurisdiction of this Court. *United States v. Green,* 10 U.S.C.M.A. 561, 28 C.M.R. 127 (1959). Who actually may do the petitioning—the appellant or his appellate defense counsel—really involves two separate questions: (1) who must make the decision *whether* to appeal, and (2) who may *manifest* that decision by executing the petition document.

■ As in all critical choices governing the conduct of his case, the accused must be the final arbiter and his defense counsel must accede to his wishes.[18] ABA Code of

---

14. *See* Fed.R.Crim.P. 5(c), 7(d), 15(d), 16, 17(b), 21(a), 21(b), 28, 29(a), 37(a)(2), 49(b); Fed.R. App.P. 3(d); Fed.R.Civ.P. 5(b).

15. Advising an accused in this regard and aiding him in executing such a power of attorney if he so elects is a function properly to be performed by the trial defense counsel subsequent to trial. *See United States v. Palenius,* 2 M.J. 86 (1977).

16. A further discussion concerning the filing of the petition for review is set forth in part II of this opinion.

17. *Fallen v. United States,* 378 U.S. 139, 142, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964); *Coppedge v. United States,* 369 U.S. 438, 442 n. 5, 82 S.Ct.

917, 8 L.Ed.2d 21 (1962); *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).

18. *See, e. g., United States v. White,* 21 U.S.C. M.A. 583, 45 C.M.R. 357 (1972) (whether to plead guilty); *United States v. Dean,* 20 U.S.C. M.A. 212, 43 C.M.R. 52 (1970) (whether to elect trial by military judge alone); *United States v. Weatherford,* 19 U.S.C.M.A. 424, 42 C.M.R. 26 (1970) (whether to solicit punitive discharge as part of the sentence); *United States v. Blunk,* 17 U.S.C.M.A. 158, 37 C.M.R. 422 (1967) (whether to forego enlisted men as members of the court); *accord, Faretta v. California* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (whether to waive the right to a defense counsel and elect, instead, to defend himself).

82

Professional Responsibility, EC 7–7, 8; ABA Standards, Criminal Appeals § 2.2(b)(1970). Indeed, Article 67(c) of the Code specifies that it is the "accused" who has 30 days to petition to this Court. Notwithstanding, the defense counsel also has a professional obligation to safeguard the interest of his client. ABA Code of Professional Responsibility, EC 6–4; see ABA Standards, Criminal Appeals, §§ 2.1–.2 (1970) (commentary). These two ethical mandates are facilely reconciled. While the defense counsel demurs to his client for the ultimate decision, he still fulfills his ethical duties by carefully and fully advising his client on the matter, even to the point of urging upon his client what he perceives to be the best course under all the circumstances.[19]

█ However, the exigencies of military defense practice—particularly at the appellate level—tend to argue in favor of some modification of this usual practice. We are informed that it is not unusual, for instance, for an accused to be sentenced to a punitive discharge and but a few months confinement, to be transferred off to a confinement facility somewhere other than where he was tried, and to serve his period of confinement and to depart on appellate leave before he even is assigned an appellate defense counsel. He does, however, have counsel who has a duty to continually advise with him after trial. See United States v. Palenius, 2 M.J. 86 (1977). That attorney and all who may be substituted for him as counsel can and should consult with the accused on a continuing basis concerning the issues involved in the appeal and the alternatives available to the accused in the event of an adverse determination by that court. The attorney can ascertain the accused's desires in the event of such an adverse determination. If the accused evidences a desire to seek further relief, he can

at that time authorize his attorney and all who may be associated with or substituted for him to take such action as may be necessary to protect his interests and his desire for further review if the decision of the Court of Military Review is adverse to him. After service of a decision of the Court of Military Review by either of the methods set forth in part I of this opinion, the attorney can and should confer again with his client and again advise him concerning the alternatives then available to him.[20] If the accused is not then available by reason of a situation similar to the one in the instant case and cannot be located within the time provided in Article 67(c) of the Code, the attorney can and should proceed in accordance with the authority previously given by the accused and file such proceedings as may be necessary to protect the interests of his client. While it is the appellant's decision whether to take an appeal to this Court, once he instructs his counsel to pursue the appeal, that attorney can and should do all that he may ethically do in furtherance of his client's cause. Implicit in what we now decide is that the attorney may sign the petition and any ancillary papers as attorney for the accused. In that regard, the attorney is acting as the agent for the appellant pursuant to his client's instruction and authorization to pursue the appeal. Execution of the pleadings only manifests the client's decision to go forward with his case.

The Government's motion to dismiss the appellant's petition is denied.

FLETCHER, Chief Judge (concurring):

I concur. I think it is necessary to write to homologize my thinking with the principal opinion.

Going first to the question of the authority granted to the President of the United States under the provisions of Article 36,

19. The same obligation exists to go forward with an appeal if the client desired it, even if the attorney felt there were no meritorious grounds to be urged on appeal. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for the procedure required

by the United States Supreme Court of counsel who perceives the absence of merit in his client's appeal.

20. See United States v. Marshall, 4 U.S.C.M.A. 607, 610, 16 C.M.R. 181, 184 (1954).

Uniform Code of Military Justice, 10 U.S.C. § 836, I agree with the statement in the principal opinion which states that the article "empowers the President to prescribe the procedure, including modes of proof, *in cases before courts-martial*." Hence, the powers of the President under this article are limited to the trial level since "courts of inquiry, military commissions and other military tribunals" are co-significative.

In order for Presidential or Service directives to have jurisdictional impact upon the administration of military justice, they must be promulgated pursuant to a congressional delegation of authority, consistent with the Constitution. "In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587, 72 S.Ct. 863, 867, 96 L.Ed. 1153 (1952).

Article 1, section 1 of the Constitution vests legislative power in the Congress. "The essentials of that function are the determination by Congress of the legislative policy and its approval of a rule of conduct to carry that policy into execution." *Hirabayashi v. United States*, 320 U.S. 81, 104, 63 S.Ct. 1375, 1387, 87 L.Ed. 1774 (1943). However, "[t]he Constitution never has been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply." *Accord, Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1935), *quoted in Currin v. Wallace*, 306 U.S. 1, 15, 59 S.Ct. 379, 83 L.Ed. 441 (1939).

In this vein, Congress has delegated to the President authority to prescribe rules of "procedure, including modes of proof, in cases before courts-martial . . . which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter." Article 36(a), UCMJ. The language of Article 36 confines the President's rule-making authority thereunder to matters of trial procedure. *United States v. Heard*, 3 M.J. 14 (1977); *United States v. Hawkins*, 2 M.J. 23 (1976); *United States v. Washington*, 1 M.J. 473, 475 n. 6 (1976); *United States v. Ware*, 1 M.J. 282, 285 n. 10 (1976).

The procedural steps necessary for appeal to this Court already are enunciated in Article 67, UCMJ, and Article 36 evidences no intention by the Congress to dilute its legislative judgment concerning appellate procedures by authorizing the promulgation of executive enlargements which undercut the congressional scheme. The Manual or regulations cannot bootstrap themselves into an area in which they have no jurisdiction by repeatedly exceeding their statutory mandate. *See Federal Maritime Commission v. Seatrain Lines, Inc.*, 411 U.S. 726, 745, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973). Nor does the lapse of time, under our constitutional scheme, transform executive action into a binding legislative pronouncement. Further, the fact that this Court previously has not had occasion to reject a Manual provision or regulation for exceeding the scope of the President's authority, even though not necessarily inconsistent with the Uniform Code, does not signify judicial sanction of all that appears in the Manual for Courts-Martial.

The second matter I must address is the applicability of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), to the military justice system. I believe the majority made *Anders* the law by its decision in *United States v. Palenius*,

2 M.J. 86 (1977). I feel we have an obligation to follow the decisions of the United States Supreme Court where they mandate a constitutional procedure.[1] As nothing in the Uniform Code of Military Justice is contrary to procedures announced by a clear majority of the Supreme Court in *Anders*, it must be followed. *United States v. Palenius, supra.*

COOK, Judge (dissenting):

As in my dissent in *United States v. Heard*, 3 M.J. 14 (1977), I again note my strong disagreement with the implication that Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836, restricts the rule-making authority of the President to the proceedings at trial. However, until such time as the implication is elevated to decision, I need not set forth my reasons. Suffice it now to say that, in my opinion, the President and the services are authorized to prescribe the forms of notice of a decision of the Court of Military Review which will start the running of the period of time prescribed by Article 67, UCMJ, within which an accused must petition this Court for further review. As the majority concede that the existing rules are constitutionally sound, I am impelled to conclude that the accused's exercise of the right to appeal to this Court is out of time. No evidence has been presented of the existence of any circumstance, such as fraud upon, or coercion of, the accused, that would toll the running of the statute. I would, therefore, grant the Government's motion, and dismiss the accused's petition for grant of review.

Military practice, as the majority acknowledge, assures an accused of continuing advice as to his right to review of his conviction. More than that, military law mandates assignment of counsel for him, regardless of his financial worth or whether there is a basis upon which to alter the results of trial. It seems to me, therefore, that the majority's recommendation, in note 19, of the procedure suggested in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), for a counsel who perceives "the absence of merit in his client's appeal" is inappropriate. In *Anders*, the Supreme Court proposed that "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Id.* at 744, 87 S.Ct. at 1400. That suggestion was made to overcome the constitutional inadequacies of the then California practice, under which court-appointed counsel could ask to withdraw because he found no merit in the appeal and, thereafter, the defendant was left without counsel, even though he had asked for substitute counsel and had himself advanced a number of assignments of error. That situation cannot occur in the military.

While I suppose there can be an occasion when the personal beliefs of appellate defense counsel might justify his withdrawal, an accused cannot, in the military, be left without appointed counsel, unless he voluntarily surrenders the right. And, no appointed counsel is in a position to disadvantage an accused's appeal by a requirement that, as a condition to being allowed to withdraw, he certify that, in his opinion, the accused's appeal is totally lacking in merit. I believe, therefore, the *Anders* procedure is ill suited to the military. I think it sufficient to emphasize, as the majority properly have, that defense counsel is an advocate for the accused, not amicus to the court. *United States v. Evans*, 18 U.S.C.M.A. 3, 39 C.M.R. 3 (1968); *United States v. Mitchell*, 16 U.S.C.M.A. 302, 36 C.M.R. 458 (1966).

1. It is, of course, clear that this Court must follow and enforce those provisions of the Code which afford the criminal defendant greater protections than those announced by the United States Supreme Court under the Constitution, *See* Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831.