UNITED STATES, Appellee

v.

Amanda N. MOSS, Private First Class
U.S. Army, Appellant

No. 13-0348

Crim. App. No. 20110337

United States Court of Appeals for the Armed Forces

Argued September 18, 2013

Decided January 27, 2014

ERDMANN, J., delivered the opinion of the court, in which STUCKY
and RYAN, JJ., joined.  BAKER, C.J., filed a separate dissenting
opinion, in which EFFRON, S.J., joined.

Counsel

For Appellant:  Captain Ian M. Guy (argued); Colonel Kevin M.
Boyle, Lieutenant Colonel Peter Kageleiry Jr., Lieutenant
Colonel Jonathan F. Potter, Major Jacob D. Bashore, and Major
Vincent T. Shuler (on brief); Colonel Patricia A. Ham.

For Appellee:  Captain Sean P. Fitzgibbon (argued); Lieutenant
Colonel James L. Varley, Major Robert A. Rodrigues, and Captain
Steve T. Nam (on brief); Major Elisabeth A. Claus.

Military Judge:  Tiernan P. Dolan

**This opinion is subject to revision before final publication.**

United States v. Moss, No. 13-0348/AR

Judge ERDMANN delivered the opinion of the court.

A panel of officers sitting as a special court-martial convicted Private First Class Amanda Moss, in absentia and contrary to her pleas, of one specification of desertion terminated by apprehension in violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885 (2012). The panel sentenced Moss to reduction to E-1, forfeiture of $978.00 pay per month for twelve months, confinement for six months, and a bad-conduct discharge. The convening authority approved the adjudged sentence and credited Moss with eighteen days of confinement against the sentence to confinement. The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and sentence. United States v. Moss, No. ARMY 20110337, 2013 CCA LEXIS 15, at *18, 2013 WL 211255, at *6 (A. Ct. Crim. App. Jan. 17, 2013).

An accused "has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Florida v. Nixon, 543 U.S. 175, 187 (2004) (internal quotation marks omitted). "[I]t is the appellant's decision whether to take an appeal to this Court . . . ." United States v. Larneard, 3 M.J. 76, 82 (C.M.A. 1977). We specified additional issues in this case to determine whether Moss authorized the appeal to this court. We hold that since the decision to appeal must be made by the appellant and because

2

the record does not reflect that Moss authorized such an appeal, the appeal must be dismissed.

## Background

On August 26, 2007, Moss left her unit without authority and remained absent for approximately three years.  Following her apprehension by civilian authorities, Moss was brought back to Fort Stewart, Georgia, and charged with desertion.  After arraignment, but prior to trial on the merits, Moss absented herself again and was ultimately tried in absentia at a special court-martial.  During the presentencing proceedings, Moss's trial defense counsel gave an unsworn statement on her behalf. The unsworn statement informed the members that Moss had absented herself to care for her aunt, VM, who was ill.  On rebuttal, however, the government called Moss's father who testified that Moss did not have an aunt with that name.

During pretrial preparation, Moss completed a "Post Trial and Appellate Rights Advisement" in which she acknowledged that if the sentence approved by the convening authority included a punitive discharge or confinement for one year or more, her case would be automatically reviewed by the ACCA.  Moss also requested representation before the ACCA by appellate defense counsel appointed by the Judge Advocate General of the Army by circling the word "do" in paragraph 13 of the rights advisement. Since Moss's approved sentence included a punitive discharge,

her case was automatically referred to the ACCA where she was represented by appellate counsel.

Before the ACCA, Moss's appellate defense counsel primarily argued that Moss was denied her Sixth Amendment right to effective assistance of counsel due to trial defense counsel's decision to give an unsworn statement on her behalf without her permission. Appellate defense counsel also argued that trial defense counsel's decision to inform the members that Moss absented herself to care for her aunt, only to have the government rebut the very existence of the aunt, demonstrated inadequate investigation of Moss's presentencing case. Moss, 2913 CCA LEXIS 15, at *4-*5, 2013 WL 211255, at *2. Ultimately, the ACCA held that trial defense counsel's strategy in providing the unsworn statement "was tactically sound and not unreasonable" and therefore did not constitute ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Moss, 2013 CCA LEXIS 15 at *16, 2013 WL 211255, at *5 (internal quotation marks and citation omitted).

Following the ACCA's decision, the ACCA Clerk's Office mailed a copy of the decision along with a cover letter to the address that Moss had last provided. The letter stated, in part:

> This letter is notification of the decision of
> the United States Army Court of Criminal Appeals and
> informs you of your right to petition the United
> States Court of Appeals for the Armed Forces for a

> grant of review.  The 60-day period within which you may petition the Court of Appeals for the Armed Forces begins on the day following the date this letter was mailed to you.
>
> If you select to petition the United States Court of Appeals for the Armed Forces (CAAF), please sign and date the five copies of DA Form 4918-R, which are enclosed, and mail them to that Court in the envelope provided.  If you DO NOT select to petition CAAF, you may request final action in your case by completing the enclosed DA Form 4919-R and mail it directly to your Appellate Defense Counsel.  DO NOT do both.

The ACCA Clerk's Office completed a Department of the Army (DA) Form 4916-R (Certificate of Service/Attempted Service) which indicated that the letter was returned as undeliverable.

On March 18, 2013, appellate defense counsel petitioned this court for review of the ACCA decision.  United States v. Moss, 72 M.J. 161 (C.A.A.F. 2013) (docketing order).  We granted review of four issues that involve the unsworn statement made by trial defense counsel.[1]  During oral argument the court asked the

---

[1] We granted review of the following issues:

  I.  Whether Appellant was denied her Sixth Amendment right to effective assistance of counsel where the defense counsel made an unsworn statement on her behalf when she was tried in absentia and there is no evidence that she consented to the unsworn statement.

  II. Whether Appellant was deprived of her right to conflict-free counsel when her defense counsel made an unsworn statement without her consent and subsequently invoked his Fifth Amendment rights and failed to assert that Appellant was prejudiced.

parties whether there was any evidence that Moss had authorized the appeal to this court, as there was no indication in the record that she had done so. Appellate defense counsel acknowledged that Moss had not signed a specific authorization for appeal to this court nor had he spoken to her and obtained a verbal authorization to appeal on her behalf. Appellate defense counsel argued that Moss's completion of the "Post Trial and Appellate Rights Advisement" constituted an implied authorization for such an appeal, and, when combined with counsel's ethical duty of continued representation, he was required to pursue the appeal before this court on Moss's behalf.

On September 20, 2013, we issued an order specifying and requesting briefing on additional issues concerning the authorization to appeal.[2]

---

III. Whether the military judge committed plain error when he allowed the defense counsel to make an unsworn statement on behalf of Appellant when she was tried in absentia.

IV. Whether the military judge abused his discretion when he found that there was no prejudice when the defense counsel read an unsworn statement without Appellant's consent and then failed to instruct the panel to disregard the unsworn statement and Sergeant First Class M's rebuttal testimony.

United States v. Moss, 72 M.J. 407 (C.A.A.F. 2013) (order granting review).

[2] We specified the following issues:

6

United States v. Moss, No. 13-0348/AR

<u>Arguments of the Parties</u>

Appellate defense counsel recognizes that the decision to appeal is personal to an appellant but argues that the following actions by Moss reflected her intent to have counsel seek relief in all possible appellate forums:  Moss requested assignment of appellate defense counsel to represent her at the ACCA; she signed the "Post Trial and Appellate Rights Advisement" which referenced her right to appeal to this court; and she authorized her trial defense counsel to file clemency matters in her absence.  Appellate defense counsel further argues that Moss

---

I.    Whether the decision to appeal to this Court is a personal decision of the Appellant, and if so, in what manner may such a decision be made?

II.   Whether there is any evidence in the record that the Appellant has authorized an appeal to this Court, and if there is no such authorization, is there nonetheless a continuing duty to represent the Appellant, and if so, from where does this duty derive?

III.  In circumstances where the Appellant cannot be located during the time period available to file a petition for grant of review at this Court, what is the responsibility of appellate defense counsel in the context of the statutory time limit in Article 67, UCMJ, to file an appeal?

IV.   Should this case be dismissed with prejudice under the holding in <u>United States v. Schreck</u>, 10 M.J. 226 (C.M.A. 1981)?

United States v. Moss, __ M.J. __ (C.A.A.F. Sept. 20, 2013) (supplemental order).

7

understood she had the same rights to counsel before this court as she did at the ACCA and therefore, absent any indication that she did not want representation at this court, it followed that she wanted to be represented before this court by appointed counsel.  Appellate defense counsel concludes by asserting that once he was appointed under Article 70, UCMJ, 10 U.S.C. § 870 (2012), he had a duty to continue representing Moss until the attorney-client relationship was terminated.  See Dep't of the Army, Reg. 27-10, Legal Services, Military Justice app. C, para. C-3 a.(1), b.(1) (Oct. 3, 2011) [hereinafter AR 27-10, app. c].  Since Moss never terminated the relationship, his duty of representation extended to all appellate proceedings under the UCMJ.  See Dep't of the Army, Reg. 27-26, Legal Services, Rules of Professional Conduct for Lawyers, R. 1.12, R. 1.16 (May 1, 1992).  The government generally agrees with Moss's position on these issues.

## Discussion

Whether the personal authorization of an appellant is required to appeal to this court is a legal issue which we review de novo.  See United States v. Daly, 69 M.J. 485, 486 (C.A.A.F. 2011).  Where, as here, all of the evidence relating to the authorization issue is in the record and is not disputed, the issue before the court "necessarily reduces to a question of law."  See United States v. Lundy, 63 M.J. 299, 301 (C.A.A.F.

2006). Both parties agree that the decision whether to take an appeal to this court is personal to an appellant. Larneard, 3 M.J. at 82. The parties also agree that Moss's completion of the "Post Trial and Appellate Rights Advisement" reflected her intent to appeal to this court and therefore constituted an implied authorization to proceed with the appeal.

Article 67(a)(3) requires this court to review:

> (3) all cases reviewed by a Court of Criminal Appeals in which, upon petition of the accused and on good cause shown, the Court of Appeals for the Armed Forces has granted a review.

10 U.S.C. § 867 (2012) (emphasis added). This provision was discussed in United States v. Rodriguez, 67 M.J. 110, 114-15 (C.A.A.F. 2009):

> Pertinent to this case is subsection (a)(3) which directs this court to review cases which have been reviewed by a Court of Criminal Appeals and where there is a "petition of the accused" and "good cause shown." The statute clearly establishes that both of these predicates must exist before the congressional mandate to review a case arises.

The threshold issue before this court is whether there is a "petition of the accused" which was personally authorized by the accused. The rights advisement was signed by Moss on April 14, 2011, three weeks prior to her trial and contained the following pertinent provisions:

> I am the accused whose name appears above. I certify that my trial defense counsel has advised me of the following post-trial and appellate rights in the event that I am convicted of a violation of the Uniform Code of Military Justice.

9

. . . .

4.  If the convening authority approves an adjudged punitive discharge (dismissal for officers; bad-conduct or dishonorable discharge for enlisted soldiers) or confinement for one year or longer, my case will be automatically reviewed by the Army Court of Criminal Appeals (ACCA).  I am entitled to be represented by counsel before such court.  If I so request, military counsel will be appointed to represent me at no cost to me.  If I so choose, I may also be represented by civilian counsel at no expense to the United States.

5.  After the ACCA completes its review, I may petition the United States Court of Appeals for the Armed Forces (CAAF) to review my case.  If that Court grants my petition, I may request review by the Supreme Court of the United States.  I have the same rights to counsel before those courts as I have before the ACCA.  If I am pending an approved dishonorable or bad-conduct discharge it may only be ordered executed after the completion of the appellate process in accordance with Rule for Court-Martial 1209 [sic], unless I waive appellate review.

. . . .

13.  (Strike through inapplicable portion.)  If applicable, I (do) (do not) [Moss circled "do" and struck through "do not"] want to be represented before the Army Court of Criminal Appeals by Appellate Defense Counsel appointed by the Judge Advocate General (TJAG) of the Army.  I understand that I may contact my Appellate Defense Counsel by writing to Defense Appellate Division, U.S. Army Legal Services Agency (JALS-DA), 901 North Stuart Street, Arlington, Virginia 22203-1837.

Ordinarily, "may" is a permissive rather than a mandatory term.  United States v. Rodgers, 461 U.S. 677, 706 (1983) ("The

word 'may,' . . . usually implies some degree of discretion.").[3] The rights advisement simply informed Moss that if her conviction was affirmed by the ACCA, she had the discretion to appeal to this court and the Supreme Court, and if she chose to do so she had the same right to counsel before those courts as she did before the ACCA. The language concerning a possible appeal to this court was informative only, and Moss's exercise of her right to counsel before the ACCA cannot be construed to authorize a subsequent appeal to either this court or the Supreme Court.

The letter sent to Moss from the ACCA Clerk's Office after the issuance of the ACCA decision reinforces this conclusion. The letter referenced and enclosed five copies of the DA Form 4918-R which is entitled "Petition for Grant of Review in the United States Court of Appeals for the Armed Forces." That form provides:

> TO THE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES:
>
> 1. I hereby petition the Court for review of my conviction.
>
> 2. I understand that, unless I specifically request the contrary, a military lawyer will be designated by The Judge Advocate General to represent me free of

---

[3] See also 10 U.S.C. 101(f)(2) ("'may' is used in a permissive sense"); Rodriguez, 67 M.J. at 117 (Effron, C.J., dissenting) ("[In Article 67(b)], Congress used permissive language: The accused may petition . . . .") (internal quotation marks omitted)).

charge before the US Court of Appeals for the Armed
Forces.

SIGNED: _____

As noted earlier, the envelope containing the letter and
copies of the ACCA decision, DA Form 4917-R ("Advice as to
Appellate Rights"), DA Form 4918-R, and DA Form 4919-R was later
returned to the ACCA Clerk's Office as undeliverable. Although
the government currently argues that Moss's post-trial election
to have appellate defense counsel represent her before the ACCA
constituted an authorization to appeal to this court, the
instructions in the ACCA Clerk's letter and the enclosed DA Form
4918-R are inconsistent with that position.

The parties also argue that appellate defense counsel had a
continuing duty to represent Moss until the attorney-client
relationship was severed. We agree that once an attorney-client
relationship is established it must continue until terminated.
See AR 27-10, app. C, para. C-3 a.(1) (stating that a duty of
continued representation exists until the attorney-client
relationship is terminated, counsel is reassigned, or the
appellate processes under the UCMJ are terminated). However,
the extent of appellate defense counsel's duty to represent Moss
was predicated on her previously provided limited authority to
appeal only to the ACCA. If the accused is not available and
cannot be located within the time provided to file a petition

for review before this court, "the attorney can and should proceed in accordance with the authority previously given by the accused and file such proceedings as may be necessary to protect the interests of his client." Larneard, 3 M.J. at 82. Paragraph 13 of the "Post Trial and Appellate Rights Advisement," where Moss indicated a desire to be represented by appellate defense counsel, was, by its own terms, limited to representation before the ACCA.[4] Therefore, the attorney-client relationship was limited to representation before the ACCA.

The issues raised in this appeal were brought on by both Moss's actions and inactions. She initially absented herself for over three years, which led to the desertion charge. She then chose to flee again prior to her trial, which resulted in her being tried in absentia. In consulting with counsel prior to trial, Moss was advised that if her sentence fell within the jurisdiction of the ACCA, her case would automatically be appealed to that court. With this information, Moss exercised her right to counsel before that court. Following the decision of the ACCA, the government provided Moss with the opportunity to appeal to this court and the opportunity to have a military lawyer designated to represent her. However, because Moss both remained absent without authorization and failed to keep the

---

[4] "If applicable, I (do) (do not) [Moss circled "do" and struck through "do not"] want to be represented before the Army Court of Criminal Appeals by Appellate Defense Counsel appointed by The Judge Advocate General of the Army."

United States v. Moss, No. 13-0348/AR

Defense Appellate Division apprised of her current address, she did not exercise that option.  Accordingly, we hold that since the decision to appeal to this court is personal to an appellant, and because Moss did not authorize the appeal, this court lacks statutory jurisdiction under Article 67(a)(3) and the appeal must be dismissed.  See Rodriguez, 67 M.J. at 114-15. Given this holding, we need not address the remaining specified issues or the granted issues.

### Decision

The court's order granting the petition for grant of review is vacated, and the petition for grant of review is dismissed.

BAKER, Chief Judge, with whom EFFRON, Senior Judge, joins (dissenting):

The Court reaches for a jurisdictional issue the parties did not raise or appeal and that we need not decide.  In doing so the majority reaches an erroneous conclusion that dramatically curtails the jurisdiction of this Court to provide appellate and civilian review of trials in absentia.  Such trials raise uncommon and complex Fifth and Sixth Amendment issues as well as ethical challenges for defense counsel.  These are just the sort of issues that must be subject to appellate review in a credible justice system and should be subject to a uniform application of law between services and servicemembers.  The majority's conclusion is also logically inconsistent, permitting defense counsel to represent absent clients at trial but not on appeal.  This is not required by the law and it is not fair.  It is no surprise, then, that the Court's decision will overturn settled law and precedent dating to the advent of the Uniform Code of Military Justice (UCMJ).  Therefore, I respectfully dissent.

In contrast to the majority, I would decide this case on the basis for which it was originally granted and determine whether defense counsel was ineffective and, if so, whether Appellant was prejudiced under Strickland.  Strickland v. Washington, 466 U.S. 668 (1984).  Indeed, the legal issues

underlying this case underscore the very concerns I have with
the majority's jurisdictional overreach: trial defense
counsel's actions at trial proved problematic in the absence of
his client, which, on appeal, cast doubt on the legality of the
proceedings. Nothing in the UCMJ suggests that Congress, by
design or implication, established a system allowing
servicemembers to be tried in their absence yet denied civilian
appellate review because of that absence. Indeed, these cases
raise a host of effectiveness and ethical issues for counsel
that should be subject to appellate review in a credible system
of justice.

## Discussion

In this case, the Court initially granted two issues raised
by Appellant. The first asserted ineffective assistance of
counsel after trial defense counsel delivered an unsworn
statement on Appellant's behalf at the conclusion of her trial
in absentia. Appellant, then the accused, went absent without
leave (AWOL) before she was tried but after she was charged.
During this interim period, defense counsel and the accused
prepared an unsworn statement, which Appellant intended to give
to the members. But the context for making that unsworn
statement changed in a manner neither the accused nor trial
defense counsel had contemplated. Among other unexpected
developments, the accused's own father testified in a manner

2

that undercut if not eviscerated her unsworn statement. Presumably, this unfavorable turn of events would have warranted at least reconsideration and revalidation of the earlier decision to give an unsworn statement and, in particular, the prior drafted unsworn statement. The second granted issue raised a related matter regarding trial defense counsel's invocation of his right to silence when asked by the military judge whether the absent accused had consented to his delivery of the accused's unsworn statement.

Against this backdrop, and following oral argument, this Court specified a number of issues addressed to whether Appellant had authorized an appeal to this Court and, in any event, whether the "fugitive disentitlement doctrine" should apply.[1] Appellant responded: yes and no. On point one -- whether Appellant had authorized appeal to this Court -- the Government agreed and noted "Appellant expressed her desire for appellate representation before she went absent from these proceedings." However, on point two, the Government disagreed. "Although appellant's petition for review was lawfully before this court, her continuing fugitive status should preclude her from any relief from this court." To emphasize, the Government

---

[1] Under what has been labeled the "fugitive disentitlement doctrine," "an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." Ortega-Rodriguez v. United States, 507 U.S. 234, 239 (1993).

stated both that the case is lawfully before this Court and "[a]ppellate defense counsel has a continuing duty to represent appellant" and if the Appellant "cannot be located within the statutory period to elect appeal to this court, appellate defense counsel is responsible for preserving, to the extent practicable under the law, appellant's ability to invoke the jurisdiction of this court upon her return."

Nonetheless, a majority of this Court has determined not only that it is impracticable for defense counsel to continue to represent the client, but also that it falls outside our jurisdiction to hear any case in which an appellate defense counsel does not demonstrate the appellant personally requested an appeal to this Court.

> [T]he decision to appeal must be made by the appellant and because the record does not reflect that Moss authorized such an appeal, the appeal must be dismissed.

United States v. Moss, __ M.J. __ (2-3).

> [A]nd because Moss did not authorize the appeal, this court lacks statutory jurisdiction under Article 67(a)(3) and the appeal must be dismissed.

Moss, __ M.J. __ (14).

> the "Post Trial and Appellate Rights Advisement,". . . was, by its own terms, limited to representation before the ACCA. Therefore, the attorney-client relationship was limited to representation before the ACCA.

Moss, __ M.J. __ (13).  Of course, this Court is not bound by the parties' agreement.  Therefore, the problem is not that the parties reached a different conclusion than the majority; the problem is that each of these conclusions is erroneous.  They also undercut the purpose and intent of the UCMJ, including one of the bedrocks of the military justice system:  the assignment of military defense counsel to an accused free of charge all the way to the Supreme Court.

First, the military justice system is predicated on the principle of civilian oversight.  This takes the form of appellate review by this Court and potentially by the Supreme Court.  Civilian review is a sine qua non for the credibility of the military justice system.  The majority, however, has determined that there should be no civilian review of trials where an accused has absented himself prior to appeal before this Court or the Supreme Court (unless, of course, for some unfathomable reason the accused was to elect in writing to appeal to this Court and perhaps the Supreme Court before being tried and convicted at court-martial).

The law does not compel this result and has not for more than sixty years of the UCMJ's existence.  Nor have there been amendments to the UCMJ that would dictate a contrary result.  Moreover, unlike Rodriguez where a three-judge majority of this

Court decided to shed the jurisdiction this Court had exercised consistently for the previous sixty years, the majority's decision here is not based on any language in the UCMJ. Compare United States v. Rodriguez, 67 M.J. 110, 115 (C.A.A.F. 2009) ("While the option of whether to petition or not petition the court rests with the appellant ('may'), Congress established without qualification when such petitions must be filed. Under the plain language of the statute, the petition must be filed within the sixty-day statutory time limit."). Further, the majority's analysis is contradictory and fails to recognize or address the tension between the exercise of jurisdiction to conduct trials in absentia and the asserted lack of jurisdiction to permit appeals in absentia. The UCMJ contains no express prohibition on the actions that a defense counsel may take on behalf of a client to include representation during a trial in absentia as well as an appeal. Nonetheless, the majority finds that a trial in absentia with a defense counsel who is not specifically authorized to represent the accused has jurisdiction, but an appeal of that trial where an accused cannot be shown to have authorized the appeal explicitly deprives this Court of jurisdiction. I do not see how this result is consistent, how it involves jurisdiction, or how it is fair. But that is the result. A defense counsel can represent an absent accused at trial but not on appeal.

Put another way:  there is no express authority for defense counsel to act for an accused who is not present.  Indeed, there is no express authority in the UCMJ for the accused to be tried in absentia.  On the contrary:  Article 39(b), UCMJ, 10 U.S.C. § 839(b) (2012) expressly requires the "presence of the accused" in all Article 39(a), UCMJ, sessions.  Article 39(c), UCMJ, requires that "all other proceedings" take place "in the presence of the accused."  If, as the majority contends, the references to the accused in Article 67, UCMJ, 10 U.S.C. § 867 (2012), are jurisdictional, why would the references to the accused in Article 39(b), UCMJ, not establish a jurisdictional prohibition against trial in absentia?

The point here is not that there is a prohibition against trial in absentia.  It is that the references to the accused in Article 67, UCMJ, like the references to the accused in Article 39, UCMJ, must be read reasonably in light of the history and purpose of the UCMJ.  If the accused can be tried in absentia under Article 39, UCMJ, then there is no statutory reason to read Article 67, UCMJ, as prohibiting an appeal in absentia.

Article 67, UCMJ, and our rules heretofore have made this clear.  Article 67(b)(2), UCMJ, has two important provisions: requirement for service of the Court of Criminal Appeals (CCA) decision on appellate counsel and express provision for this Court to act on a petition in accordance with our rules.  The

Court's Rules of Practice and Procedure (e.g., Rule 20) expressly recognize a petition filed by appellate defense counsel as a separate channel of appeal. C.A.A.F. R. 20(b). There is no statutory requirement that counsel's submission be accompanied by an authorization from the client, nor do the rules require such a submission. How, then, can this be jurisdictional? This is a jurisdictional invention of the Court.

Moreover, by focusing exclusively on the culpability and conduct of the accused and not on the credibility of the system as a whole, the majority removes the prospect of civilian and even military appellate review in that group of cases that is arguably most suspect to abuse -- trials in absentia.[2] Indeed, trials in absentia are the sort of trials that undermine the credibility of foreign military justice systems. These are also just the sort of trials where civilian oversight of the U.S. military justice system is important, as a matter of validation and as a matter of credibility. In addition to raising important questions involving the knowing and voluntary waiver of an accused's Fifth and Sixth Amendment rights, trials in absentia raise a host of uncommon and complex ethical challenges for defense counsel. What actions may or should defense counsel

---

[2] For this same reason, I would not apply the fugitive disentitlement doctrine under the circumstances of this case.

take at trial without the informed consent of the client? See Model Rules of Prof'l Conduct R. 1.4 (2013). What duties, if any, does defense counsel have to seek a speedy trial, or in the alternative, delay the start of a trial? Id.; Dep't of the Army, Reg. 27-26, Rules of Professional Conduct for Lawyers R. 3.2 (May 1, 1992). To what extent, if at all, can defense counsel waive the attorney-client privilege? See United States v. Marcum, 60 M.J. 198 (C.A.A.F. 2004); Military Rule of Evidence (M.R.E.) 511. To what extent may defense counsel waive an accused's right to trial by members? When, and to what extent, can defense counsel effectively represent a client when the defendant is not present at trial?[3] The majority opinion not only fails to spot and address these issues by choosing to curtail appellate review of in absentia trials, but it also ensures the answers will vary from trial to trial and defense counsel to defense counsel. That is not the uniform system Congress envisioned or enacted.

Even more alarming, the effect of the majority's decision is to close the courtroom door not only to an accused who intentionally absents himself, but also to military members who are convicted at trial and subsequently cannot be located while

---

[3] See Sarah C. Sykes, "Defense Counsel, Please Rise": A Comparative Analysis of Trial In Absentia, 216 Mil. L. Rev. 170 (2013).

they are on appellate leave.  We cannot put a number on the potential pool of appellants that might fall into this category, but we know it is a large number based on the number of cases dismissed following Rodriguez.[4]

To avoid this risk -- not just of the AWOL appellant, but the far more frequent appellant who cannot be located -- the majority's new rule will compel defense counsel to seek authorization to appeal to the Courts of Criminal Appeal, this Court, and the Supreme Court.  Such an authorization will neither be informed nor based on a particular decision of the Court of Criminal Appeals.  It will be defensive in nature to ensure jurisdiction in the event of appeal.  But of course, having authorized an appeal, appellate defense counsel will be bound to appeal.  In short, authorization to appeal will be given without specific input from an appellant, but based on the risk that appellate defense counsel will not be able to locate an appellant to authorize an appeal upon receipt of the CCA's decision.  Nor will authorization to appeal be based on what is actually decided at the CCA.  For this same reason, defense and appellate defense counsel who wish to avoid ineffective assistance of counsel claims should also seek advance authorization to appeal to the Supreme Court, without first

---

[4] No doubt this Court has heard and decided many cases for which the majority decides today this Court has never had jurisdiction.

10

knowing the outcome before the Criminal Court of Appeals or this Court. As discussed above, this result is not required by the UCMJ; it runs contrary to the UCMJ's intent.

Finally, the majority's adoption of a mechanical and formalistic approach to determining whether an appellant has authorized appeal before this Court unduly and impracticably interferes with the attorney-client privilege. By requiring appellate defense counsel to demonstrate that a client has specifically authorized appeal to this Court, the majority places appellate defense counsel between a rock and hard place. Either the decision dictates the manner in which they communicate with their client by compelling written evidence of an appeal authorization or it will compel appellate counsel to reveal verbal attorney-client communications in order to demonstrate a personal decision by an appellant to appeal to a specific court. Presumably, defense counsel will be compelled to file an affidavit documenting such a client communication.

The majority does all this without even addressing or explaining how a lawyer might fulfill his or her ethical duty to represent clients zealously and diligently when the client cannot be located, for whatever reason, to authorize an appeal personally, and where the lawyer believes meritorious issues warrant appeal.

For all these reasons, I respectfully dissent.

11